Riverdale State Bank v. Schmidt.

---

No. 26,923.

THE RIVERDALE STATE BANK, *Appellant*, v. E. H. SCHMIDT, *Appellee*.

### SYLLABUS BY THE COURT.

1. BANKS AND BANKING — *Stockholders' Double Liability — Transfer During Insolvency—Evidence.* The admission of evidence to show that stockholders in a bank had paid assessments on their stock is not prejudicial error in an action against a stockholder to recover on his double liability, where it is alleged that he had transferred his stock when the capital of the bank was ·impaired and when the bank was in a failing condition.

2. SAME—*Stockholders' Double Liability—Verdict.* It was not error to deny the plaintiff's motion for judgment on the evidence, to overrule the demurrer of the plaintiff to the evidence of the defendant, nor to refuse to instruct the jury to return a verdict for the plaintiff.

3. SAME—*Stockholders' Double Liability—Validity of Transfer of Stock.* There was evidence to show that the bank commissioner, by correspondence, had been notified of the transfer of the stock owned by the defendant. There was no evidence to show that the transfer had not been formally certified to the bank commissioner. *Held,* that the transfer of stock was not invalid.

4. SAME—*Stockholders' Double Liability—Insolvency of Bank—Instructions.* There was no error in instructions of the court concerning the circumstances under which the jury might find that the bank was in a failing condition, and it was not error to refuse to give requested instructions on that subject.

5. SAME — *Stockholders' Double Liability — Insolvency of Banks — Evidence.*

Appeal and Error, 4 C. J. p. 969 n. 56. Banks and Banking, 7 C. J. pp. 522 n. 81, 523 n. 84; 3 R. C. L. 407.

There was evidence to support the findings of the jury that the bank was not in a failing condition and that its capital was not impaired at the time the stock was transferred.

6. Same—*Instructions*. There was no error in the instructions of the court concerning the term "actual cash market value of assets."

Appeal from Harper district court; George L. Hay, judge. Opinion filed March 12, 1927. Affirmed.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson*, all of Wichita, and *Vernon Day*, of Anthony, for the appellant.

*P. D. Gardiner, A. W. Hershberger*, both of Wichita, *Donald Muir* and *Harry B. Davis*, both of Anthony, for the appellee.

The opinion of the court was delivered by

Marshall, J.: The plaintiff sued the defendant, a stockholder in plaintiff bank, to recover on his double liability as a stockholder in the bank. Judgment was rendered in favor of the defendant, and the plaintiff appeals.

The petition alleged that the defendant had been a stockholder in the bank and had transferred his stock when the bank was in a failing condition and when its capital was impaired. The trial was to a jury, which rendered a general verdict in favor of the defendant and answered special questions as follows:

"1. What was the value on September 5, 1924, of the Fred Strong note of $1,650? A. $512.58.

"2. What was the value on September 5, 1924, of the A. L. Siler note of $358.75? A. $297.77.

"3. What was the value on September 5, 1924, of the L. J. Brown note of $426.50? A. $273.59.

"4. What was the value on September 5, 1924, of the H. D. Shutler notes of $300? A. $275.

"5. What was the value on September 5, 1924, of the Chas. Bell note of $595? A. $297.50.

"6. What was the value on September 5, 1924, of the Enos Bell note of $230.48? A. $200.

"7. What was the value on September 5, 1924, of the William Campion note of $1,400? A. $1,000.

"8. What was the total value of the following notes on September 5, 1924; C. R. Thorp note of $76.70, C. W. Henzy note of $55, Merle Phipps note of $23.75, I. E. Dunham of $38.80, and the C. E. Willey note of $35.55? A. $97.12.

"9. What was the cash market value of the item of $2,730 represented by the bank building on September 5, 1924? A. $2,500.

"10. What was the cash market value of the item of $3,000 represented by the store building on September 5, 1924? A. $3,000.

Riverdale State Bank v. Schmidt.

"11. What was the cash market value of the item of $1,870 represented by the furniture and fixtures on September 5, 1924?  A. $1,200.

"12. At the time that the defendant transferred his stock to the said C. E. Swartzendruber in the Riverdale State Bank, state whether you find: First: Was said bank in a failing condition?  A. No.  Second: Was the capital of said bank impaired?  A. No."

The pertinent statute is section 9-153 of the Revised Statutes. Part of that section reads:

"The shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws thereof may direct. . . . No transfer of stock shall be made when the bank is in a failing condition, or when its capital is impaired. All transfers of stock shall be certified to the bank commissioner immediately."

1. One complaint of the plaintiff is that "the court erred in overruling plaintiff's objection to the introduction of evidence." The evidence to which objection was made was that which tended to prove that two previous assessments on the stock had been made and paid. The evidence may have been immaterial, but the court does not perceive wherein it could have been prejudicial to the plaintiff.

2. Another complaint is that "the court erred in denying the motion of the plaintiff for an instructed verdict." The question here argued was also presented by a demurrer of the plaintiff to the evidence of the defendant and by a motion of the plaintiff for judgment on the evidence. The demurrer was overruled, and the motions were denied. This depends on the evidence which is in part reflected in the answers of the jury to the questions submitted. The bank's daily statement on September 5, 1924, the date of the transfer of the stock, was as follows:

| RESOURCES. | | LIABILITIES. | |
| --- | --- | --- | --- |
| Loans and discounts | $17,822.99 | Capital | $10,000.00 |
| Bonds and warrants | 905.81 | Surplus | 1,100.00 |
| Other resources | 1,926.44 | Undivided profits | ....... |
| Overdrafts | 184.23 | Interest | 1,070.84 |
| Expense | 1,111.49 | Exchange | ....... |
| Interest paid | 233.30 | Rent | 200.00 |
| Other real estate owned | 3,000.00 | Cashier's checks | ....... |
| Securities with banking de- | | Individual deposits | 22,573.68 |
| partment | 500.00 | Certificates of deposit | 962.45 |
| Furniture and fixtures | 1,870.00 | Savings deposits | 1,851.84 |
| Bank building | 2,730.00 | | |
| Southwest State Bank, | | | |
| Wichita | 4,054.37 | | |
| First National, Wellington, | 2,270.83 | | |
| Cash | 1,149.35 | | |
| Total | $37 758.81 | Total | $37,758.81 |

There was evidence which tended to show that the loans and discounts shown above were in part made up of $5,365.43 in notes of questionable or of no value. These were the notes named in the special questions submitted to the jury. Appellee's counter abstract shows the testimony of the president of the plaintiff bank as follows:

"Q. You thought, and you stated at that meeting, it was in good condition, didn't you? A. Well, it was solvent all right, but it would just have been a question of running that bank a little while until we put up another assessment.

"Q. It was solvent, was it? A. Yes; it was solvent. We considered the real estate owned by the bank worth $3,000, the amount it was carried on the statement. On August 21, 1924, at the time the statement was published, we thought the bank building was worth $2,730, at which it was carried. We had collected $9,000 to take care of the liquidation of the bank, and it could have been liquidated with this collection without loss, or if there had been any loss, it would have been a small one.

"Q. You knew of these particular notes you have been telling about at that time, didn't you? A. Yes.

"Q. And you still think they could not be collected? A. You might collect on some of them if you held some of them long enough."

The minutes of a meeting of the board of directors of the bank on July 10, 1924, stated:

"E. H. Schmidt spoke of whether it would be best to liquidate the bank or sell his interest, as he lived so far away to be interested. And it was decided that owing to the bank being in good condition and the prospects for the future it would be a losing proposition to liquidate."

There was evidence which tended to prove that some notes had been charged off; the amount of them does not appear, neither does their value. They were assets of the bank. It was the duty of the plaintiff to show that they had no value, and to show that the entire resources of the bank were insufficient to pay its debts. The charged-off notes probably were of some value. One witness testified that $1,628.25 had been collected on notes that had been charged off. The jury could properly take into consideration the value of the charged-off notes. There was no error in denying the motion of the plaintiff for an instructed verdict, no error in overruling the demurrer of the plaintiff to the evidence of the defendant, and no error in denying the motion of the plaintiff for judgment on the evidence.

3. The plaintiff urges that the judgment is erroneous because "the transfer of stock was not certified to the bank commissioner."

The evidence does not disclose that the fact of the transfer of the stock by the defendant to Mr. Swartzendruber was not formally certified to the bank commissioner. The evidence does show that the commissioner through correspondence was notified of the fact of the transfer of that stock. The transfer of stock was not invalid.

4. The plaintiff argues that "the court erred in its instruction as to when a bank shall be deemed to be in a failing condition, and in refusing to give instructions 4 and 5 requested by plaintiff." On this question, the court instructed the jury as follows:

"9. Under the laws of this state a bank shall be deemed to be in a failing condition at any time when it is in imminent danger of becoming insolvent as herein instructed; and the capital of any bank shall be regarded as being impaired when the actual cash value of its assets is less than its liabilities, with the value of its maturing paper being estimated at its present worth at the usual discount rate of the bank."

Another instruction given was as follows:

"8: Our statute further provides that a bank shall be deemed to be insolvent: First, when the actual cash, market value of its assets are insufficient to pay its liabilities. Second, when it is unable to meet the demand of its creditors in the usual and customary manner. Third, when it shall fail to make good its reserve as required by law."

There was no error in these instructions. Instructions 4 and 5, asked by the plaintiff, were somewhat lengthy, and it is not deemed advisable to here reproduce them. They undertook to substitute the judgment of the court for that of the jury so far as determining whether or not the bank was in a failing condition or its capital was impaired. It was not error to refuse to give them.

5. Plaintiff argues that "the court erred in overruling the motion of the plaintiff to set aside the findings to special interrogatory No. 12, and in denying the motion of the plaintiff for judgment upon the special findings." This is in part a reargument of the proposition discussed under the second subdivision of this opinion, and depends on the sufficiency of the evidence to support the answers to question No. 12 submitted to the jury. That evidence has been summarized and set out. It tended to prove that at the time the defendant transferred his stock the bank was not in a failing condition and its capital was not impaired. The plaintiff was not entitled to judgment on the special findings of the jury.

6. Another complaint is that "the court erred in its instruction as to what is meant by the term 'actual cash, market value of assets.'" The instruction complained of was as follows:

Bollier v. Missouri Pac. Rld. Co.

"By the term 'actual cash, market value of assets,' is not necessarily meant the cash value of these assets under an immediate forced sale, but rather the actual cash market value of its assets as contemplated and practiced in the usual and ordinary course of banking and while the bank is a going concern."

The instruction did not incorrectly state the law.

The judgment is affirmed.